UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

_____

Nº 12-CV-2096 (JFB)(GRB)
_____

GILES R. SANDVIK,

Plaintiff,

VERSUS

SEARS HOLDING/SEARS HOME IMPROVEMENT PRODUCTS, INC.,

Defendant.
_____

**MEMORANDUM AND ORDER**
January 2, 2014
_____

JOSEPH F. BIANCO, District Judge

Plaintiff Giles Sandvik ("plaintiff" or "Sandvik") brings this action against defendant Sears Home Improvement Products ("defendant" or "Sears" or "SHIP"), alleging that SHIP violated the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 *et seq.*, the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 296, and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code §§ 8–10 *et seq.*, as amended by the Local Civil Rights Restoration Act of 2005. Plaintiff alleges that he was the subject of age discrimination when he was demoted from upper-level managerial positions in February and April 2010, and constructively discharged from his thirty-eight year tenure at Sears in June 2010. Plaintiff seeks actual, compensatory, emotional, and liquidated damages, as well as attorneys' fees and other costs. Defendants counter that the February 2010 and constructive discharge claims under the ADEA are not properly before this Court because they were not presented to the Equal Employment Opportunity Commission; that plaintiff cannot demonstrate any adverse employment action because he voluntarily rejected a promotion in April 2010 and voluntarily resigned in June 2010; and that, even assuming *arguendo* that plaintiff could show adverse actions, plaintiff cannot demonstrate that SHIP acted with discriminatory motive.

Defendant now moves for summary judgment pursuant to Federal Rule of Civil Procedure 56. For the reasons set forth below, the Court grants the motion with respect to the ADEA claim as to the February 2010 demotion, and denies the motion with respect to the ADEA claim as

to the April 2010 demotion and plaintiff's alleged constructive discharge. The motion is also denied as to the claims under the NYSHRL and NYCHRL in their entirety.

I. BACKGROUND

A. Factual Background

The Court takes the facts set forth below from the parties' depositions, affidavits, exhibits, and respective Rule 56.1 Statements of Facts. The Court construes the facts in the light most favorable to the non-moving party. *See Capobianco v. City of New York*, 422 F.3d 47, 50 (2d Cir. 2005). Unless otherwise noted, where a party's Rule 56.1 statement is cited, that fact is undisputed or the opposing party has not pointed to any evidence in the record to contradict it.[1]

1. Plaintiff's Employment at Sears and February 2010 Demotion

Plaintiff was born on March 14, 1959, and began working for Sears in 1978. (Def. 56.1 ¶¶ 7, 9.) In or around 2004–2005, plaintiff was promoted to District Sales Manager ("DSM") on Long Island. (*Id.* ¶ 10.) In 2006, when plaintiff was forty-seven, he was promoted to be SHIP's District General Manager ("DGM") for the Long Island District. (Pl. 56.1 ¶ 11.) While plaintiff was DGM, a DSM and a Production Manager reported directly to him. (Def. 56.1 ¶ 12.) Through October 2009, the DSM was Craig Marin ("Marin"). (Pl. 56.1 ¶ 13.) Plaintiff, meanwhile, reported directly to Regional Sales Manager ("RSM") William Sprotte ("Sprotte"), who in turn reported to Regional Vice President Glenn Moore ("Moore"). (Def. 56.1 ¶¶ 14, 18.)

During plaintiff's tenure as DGM, the Long Island District met or exceeded certain performance goals. (Pl. 56.1 ¶ 163.) In 2008, plaintiff received a rating of 3.3 out of 5 on his performance review, which indicated he was "a great manager," "very people oriented," and "truly cares about his work he performs at Sears." (*Id.* ¶¶ 164, 165.) In plaintiff's 2009 mid-year review, however, Sprotte stated that there were customer service issues on Long Island. (*See* 2009 Mid-Year Review, Bernbach Decl. Ex. 21.) During discussions in December 2009 regarding the continuing low customer service levels (*see* Pl. 56.1 ¶¶ 15, 180), Sprotte suggested that plaintiff "entertain" a demotion from DGM on Long Island to a DSM position (Sandvik Dep. at 52–54). Plaintiff's testimony is not entirely clear, but Sprotte apparently offered him the DSM position in New Rochelle, in the New York City District. (*Id.*) Plaintiff refused. (*Id.* at 53, 55.) Sprotte and Moore also indicated they would consider offering plaintiff a DSM position on Long Island. (*See id.* at 61.) Plaintiff agreed, but he claims he did so because he needed the job and "was already told that there would be no performance review because it was already determined what direction that was going to go in, that it wasn't going to go [his] way." (*Id.*) Plaintiff later learned the position actually would be in New Rochelle.[2] (Def. 56.1 ¶ 20.)

---

[1] Where the parties' Rule 56.1 Statements contain specific citations to the record as support, the Court cites to the Rule 56.1 Statements, rather than the underlying citation to the record.

[2] Defendant notes that plaintiff previously testified that he was "given a choice of other options [he] could take"; that it would not be correct that if he "didn't pick any of those positions [he] would have been terminated"; and that if he rejected any position, he "could have continued doing what [he] was doing, but [he'd] be under review." (Sandvik Dep. in *Cohen* at 7–10, Kantor Reply Decl. Ex. D.) Any alleged inconsistencies in this regard, and defendant's arguments regarding plaintiff's credibility, are assessments to be made by the jury, not the Court.

2

In February 2010, Sprotte demoted plaintiff to DSM in New Rochelle. (Def. 56.1 ¶ 21.) Moore learned of the demotion after the fact.[3] (*Id.* ¶ 22.) Sprotte testified that customer service and compliance issues with area contractors prompted the demotion. (Sprotte Dep. at 17–18.) According to Sprotte, "[s]ervices were high, so therefore customers were not being taken care of in a timely fashion. Customer concessions [having to give money back or change products due to Sears's inefficiencies] were the highest they've been in the northeast region. Long Island had the highest concession amount." (*Id.* at 18.) Plaintiff, however, never was put on a "performance plan for improvement" ("PPI"), although SHIP's policy mandates that an employee's manager "[g]ive [the employee] a fair opportunity and encouragement to improve performance."[4] (Pl. 56.1 ¶¶ 220, 222.)

As DSM in New Rochelle, plaintiff reported to DGM William Ewashkow, who was fifty. (*Id.* ¶ 24.) Ewashkow reported to RSM Peter Adam. (*Id.* ¶ 25.) Marin, then forty-nine, replaced plaintiff as DGM on Long Island after James Bingham—who was in his late twenties or early thirties—filled the position after plaintiff's demotion. (*Id.* ¶ 27; Pl. 56.1 ¶ 27.) In 2011, Marin was promoted to SHIP's Director of Field Operations. (Def. 56.1 ¶ 27)

2. Plaintiff's April 2010 Reassignment to Field Sales Manager

On April 4, 2010, Adam demoted plaintiff from DSM to Field Services Manager ("FSM") on Long Island, under Marin. (Def. 56.1 ¶ 29.) Plaintiff claims that Adam gave no reason for the reassignment. (*Id.* ¶ 30.) Marin did not know why plaintiff was transferred, either.[5] (Marin Dep. at 26–27.) Adam testified that Ewashkow had complained of plaintiff's "unsatisfactory" performance. (Pl. 56.1 ¶ 260.) According to Moore, Ewashkow's "major concerns" with plaintiff's performance precipitated the demotion. (*Id.* ¶ 261.) Ewashkow, however, testified that plaintiff did "a good job," that Ewashkow never reprimanded plaintiff, and that Ewashkow never complained about plaintiff's performance. (Ewashkow Dep. at 12–13.) Josh Burnett, who was in his late twenties to early thirties, replaced plaintiff. (Pl. 56.1 ¶ 287.)

---

For purposes of summary judgment, the Court views the testimony and evidence in the light most favorable to plaintiff, the non-moving party, notwithstanding any alleged inconsistencies. *Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996); *see also Hayes v. N.Y.C. Dep't of Corr.*, 84 F.3d 614, 619 (2d Cir. 1996) ("In applying th[e] [summary judgment] standard, the court should not weigh evidence or assess the credibility of witnesses.").

[3] Plaintiff claims that Moore approved the demotion. (Pl. 56.1 ¶ 22 (citing Moore Dep. at 29–30).) The Court has reviewed the deposition testimony and concludes that no reasonable factfinder could agree. In response to counsel's attempts to clarify the issue, Moore unambiguously testified that he learned of the transfer "[a]fter the fact." (Moore Dep. at 30.)

[4] In an email dated December 1, 2009, Sprotte wrote:

> I think we need to make a move on Long Island and Giles. . . . I have not started the PPI process as of yet at all due to it pulling back on a couple of occasions but if I start I will go two week increments and it will be all said and done as I do not see how he would make it out if we tie it all into one on derelict of duties (permits, not hitting forecasts MOM, inability to staff district properly across the board, inability to lead, non motivational). You get the point.

(December 1 Email, Bernbach Decl. Ex. 25.)

[5] Marin was happy to have plaintiff given their good working relationship. (Def. 56.1 ¶ 38.)

After his demotion, plaintiff contacted Regional Human Resources Manager Chuck Klinzing ("Klinzing"). (Def. 56.1 ¶ 31.) Klinzing was unaware of plaintiff's demotions.[6] (*Id.* ¶¶ 32–33.) He advised plaintiff to accept the FSM position pending an investigation. (*Id.* ¶ 34.) Klinzing found no documentation regarding the demotions, such as a PPI or other explanation. (*Id.* ¶ 39; Pl. 56.1 ¶¶ 39, 293.) Plaintiff even continued to receive the DSM salary after becoming an FSM because Adam failed to complete the transfer process. (Def. 56.1 ¶ 39; Pl. 56.1 ¶ 294.) Klinzing reported these issues to Human Resources Director Teige McShane, who said he would investigate further. (Def. 56.1 ¶ 40.)

The parties dispute the subsequent events. Moore claims that McShane instructed him to offer plaintiff a DSM position on Long Island. (Moore Dep. at 135–36.) Moore testified that he was "instructed to [e]nsure that [Sandvik] was offered that position," because McShane worried that Sandvik "had not received a PPI prior to the change, and based on that, [McShane] wanted him to have the opportunity to fill that role in Long Island." (*Id.*) Plaintiff counters that McShane never issued any such directive. Plaintiff points to an email from McShane to Moore on April 13, 2010, that expressed McShane's concern with plaintiff's demotion and the lack of a PPI or review by Klinzing. (*See* April 13 Email, Saccomano Aff. Ex. N.) McShane instructed the parties to "figure out the course to take with Giles."[7] (*Id.*) Klinzing also arranged a retroactive PPI pertaining to plaintiff's performance as DSM. (April 6 Email, Bernbach Decl. Ex. 28.)

Shortly thereafter, plaintiff, Moore, and Marin met on Long Island. (Def. 56.1 ¶ 44.) Moore claims that he received a call from Human Resources and then offered plaintiff the DSM position on Long Island. (*Id.* ¶ 46.) Moore also said that Marin, who supported the assignment, spoke highly of plaintiff. (*Id.* ¶¶ 47–48.) Plaintiff asked if there would be an issue with Adam if plaintiff took the position. (*Id.* ¶ 49.) Moore said no. (*Id.* ¶ 50.) Plaintiff asked for some time to consider, and he spoke with Marin and expressed his concerns about Adam. (*Id.* ¶¶ 51–52.) Marin said he did not think anything would happen. (*Id.* ¶ 53.) Plaintiff then shared his concerns with another DSM on Long Island, Steve Gilbert ("Gilbert"). (Pl. 56.1 ¶ 318.) Plaintiff was dubious of the offer given his issues with the supervisors and the fact that he had been demoted, and thought that the offer was made to cover SHIP in the event of a lawsuit. (*Id.*) Gilbert told plaintiff that the offer was premised upon the claim that a second DSM job was needed, but agreed that the offer made no sense given plaintiff's experiences. (*Id.* ¶ 321.) Marin also told plaintiff that Adam had it in for him and that accepting the offer would not forestall any termination. (*Id.* ¶ 324.) Plaintiff chose to remain in the FSM position.[8] (Def. 56.1 ¶ 54; *see* Rejection Email, Bernbach Decl. Ex. 39.)

---

[6] Plaintiff claims that he told Klinzing in an email that he was demoted because of his age. (Sandvik Decl. ¶ 7.) Defendant does not rebut this, but a copy of the email is not in evidence. Klinzing's emails to others do not mention this accusation.

[7] Plaintiff also proffers an email from McShane to Moore and Brown with the same date and timestamp. (*See* Bernbach Decl. Ex. 37.) This email is similar but not the same as defendant's version, and could support defendant's version of the events. (*See id.* ("Giles will be required to sit through New Hire training in preparing to be a FSM. Not sure what the point is. He should be managed as a DSM.").) Neither party mentions the discrepancy. In any event, that email (regardless of the version) is not dispositive with respect to the Court's determination on the motions.

[8] Defendant only objects to the aforementioned facts as irrelevant. (*See* Reply, at 3.) The Court overrules

4

On June 20, 2010, plaintiff resigned from SHIP and assumed a position with Home Depot. (Def. 56.1 ¶¶ 56–57.) Plaintiff checked the box for "voluntary separation" on his separation form, noted his dissatisfaction with Adam, and noted his satisfaction with Marin. (*Id.* ¶¶ 60–62.) In a deposition in a different matter, plaintiff testified that he left Sears voluntarily. (Sandvik Dep. in *Laskin* at 7, Kantor Reply Decl. Ex. E.) Plaintiff, however, claims that he left because he thought his termination was inevitable. (*See* Pl. 56.1 ¶ 56.)

3. Allegations of Age Discrimination at SHIP

Plaintiff alleges that the management in SHIP's Northeast Region sought to orchestrate terminations and force older employees to resign. (Pl. 56.1 ¶ 135.) Plaintiff frequently was told that SHIP "needed more young blood in the organization" and "to get rid of the old wood." (*Id.* ¶ 136.) At job fairs, Moore allegedly said, "I don't know what's wrong with these older guys, they don't want to work, we need younger blood." (*Id.*) Sprotte also allegedly said, "We got to get rid of these old guys, we have to fill them with new, younger blood." (*Id.*) According to plaintiff, "[t]here just seemed to be a perception with all the individuals that we need younger people in the organization because they felt that the younger people had more energy, and they wanted to mirror other parts of the country where there was an overall younger organization in the home improvement business." (Sandvik Dep. in *Laskin* at 11, Bernbach Decl. Ex. 2.) Plaintiff also asserts that superiors also exploited performance numbers to manipulate them and develop "sham PPIs" for older employees. (Pl. 56.1 ¶ 142.) In addition, based on charts from SHIP, from 2008–2010, the number of workers aged fifty or older employed in the Long Island District fell eighty-one percent, from thirty-two to six. (Pl. 56.1 ¶ 157.) In 2009 and 2010, fifteen of the twenty-one individuals hired were forty or younger, with twelve of them thirty-five or younger. (*Id.* ¶ 159.)

None of the discussions about plaintiff's demotions, contained in the emails, mentions his age.

4. Plaintiff's EEOC Submissions

On November 18, 2010, plaintiff submitted an intake questionnaire to the Equal Employment Opportunity Commission ("EEOC"). (EEOC Intake Questionnaire, Bernbach Decl. Ex. 17.) For "Job Title at Time of Alleged Discrimination," plaintiff wrote "District Sales Manager." Ewashkow was plaintiff's immediate supervisor. Plaintiff named Adams as the person who demoted him and wrote that a much younger associate replaced him despite his performance. Plaintiff also mentioned Gilbert's demotion. Plaintiff did not mention his resignation or the demotion in February 2010. (*See id.*)

On January 3, 2011, plaintiff filed a Charge of Discrimination (the "charge"). (EEOC Charge, Saccomano Decl. Ex. C.) Plaintiff alleged age discrimination based on his April 4, 2010 demotion. Plaintiff claimed that he filed an internal complaint and was told, without explanation, that the demotion was justified. Plaintiff also wrote: "Two months after I was demoted I was able to find a new job with a different company. I later found out that my former position was given to a much younger man." (*Id.*) Plaintiff did not mention the February 2010

---

that objection; the facts are material to plaintiff's decision to reject the promotion.

5

demotion. He listed June 21, 2010 as the "latest" date the discrimination took place. (*Id.*) The EEOC issued a Notice of Right to Sue on February 7, 2012. (Notice of Right to Sue, Saccomano Decl. Ex. D.)

B. Procedural Background

Plaintiff commenced this action on April 27, 2012. Defendant answered on May 21, 2012. Defendant moved for summary judgment on July 18, 2013. Plaintiff opposed on September 4, 2013. Defendant replied on September 24, 2013. The Court held oral argument on November 1, 2013.

II. STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56(a), a court may only grant a motion for summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of showing that he or she is entitled to summary judgment. *Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2005). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004) (quoting *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996)); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (summary judgment is unwarranted if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Once the moving party has met its burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial.*" *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)). As the Supreme Court stated in *Anderson*, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." 477 U.S. at 249–50 (citations omitted). Indeed, "the mere existence of *some* alleged factual dispute between the parties" alone will not defeat a properly supported motion for summary judgment. *Id.* at 247–48. Thus, the nonmoving party may not rest upon mere conclusory allegations or denials but must set forth "'concrete particulars'" showing that a trial is needed. *R.G. Grp., Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir. 1984) (quoting *SEC v. Research Automation Corp.*, 585 F.2d 31, 33 (2d Cir. 1978)). Accordingly, it is insufficient for a party opposing summary judgment "merely to assert a conclusion without supplying supporting arguments or facts." *BellSouth Telecomms., Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996) (quoting *Research Automation Corp.*, 585 F.2d at 33).

6

The Second Circuit has provided additional guidance regarding summary judgment motions in discrimination cases:

> We have sometimes noted that an extra measure of caution is merited in affirming summary judgment in a discrimination action because direct evidence of discriminatory intent is rare and such intent often must be inferred from circumstantial evidence found in affidavits and depositions. *See, e.g.*, *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1224 (2d Cir. 1994). Nonetheless, "summary judgment remains available for the dismissal of discrimination claims in cases lacking genuine issues of material fact." *McLee v. Chrysler Corp.*, 109 F.3d 130, 135 (2d Cir. 1997); *see also Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001) ("It is now beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases.").

*Schiano v. Quality Payroll Sys.*, 445 F.3d 597, 603 (2d Cir. 2006) (quoting *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 69 (2d Cir. 2001)).

III. DISCUSSION

Defendant moves for summary judgment on the following grounds: (1) with respect to the ADEA claim, the EEOC charge did not encompass plaintiff's February 2010 demotion or claim for constructive discharge, and the 2010 demotion claim otherwise is time-barred; and (2) with respect to the federal, state, and city claims, plaintiff cannot establish a *prima facie* case of age discrimination. As set forth in detail below, the Court concludes that plaintiff's February 2010 demotion was not encompassed by the EEOC charge, or reasonably related to it, and thus, summary judgment as to the demotion is warranted in defendant's favor. The Court concludes, however, that the April 2010 demotion and alleged constructive discharge were contained within the scope of the EEOC charge and are properly before this Court. In addition, construing the evidence most favorably to plaintiff with respect to the alleged demotion in April 2010 and alleged constructive discharge, there is sufficient evidence to establish a *prima facie* case of age discrimination under the ADEA including sufficient evidence to create a genuine issue of disputed fact as to whether he suffered an adverse employment action in April 2010 when his supervisor sought to transfer him from DSM to FSM and whether his working conditions were so intolerable in June 2010 that he suffered a constructive discharge. The same is true for the whole of plaintiff's claims under New York State and New York City law. Accordingly, the motion is granted in part and denied in part.

A. ADEA Age Discrimination Claim

1. Scope of the EEOC Charge

a. Legal Standard

To assert an ADEA claim in federal court, a plaintiff must file an administrative charge alleging discrimination within 300 days of the alleged discriminatory conduct. *O'Grady v. Middle Country Sch. Dist. No. 11*, 556 F. Supp. 2d 196, 199 (E.D.N.Y.

7

2008) (citing *Ruhling v. Tribune Co.,* No. 04 Civ. 2430(ARL), 2007 WL 28283, at *8 (E.D.N.Y. Jan. 3, 2007) ("Under Title VII and the ADEA, a plaintiff must file an administrative charge . . . within 300 days after a claim accrues.")). This statutory filing period is "analogous to [ ] statute[s] of limitations," *Van Zant v. KLM Royal Dutch Airlines,* 80 F.3d 708, 712 (2d Cir. 1996), and, as such, "a failure to timely file a charge acts as a bar to a plaintiff's action." *Butts v. N.Y.C. Dep't of Hous. Pres. & Dev.*, No. 00 Civ. 6307(KMK), 2007 WL 259937, at *6 (S.D.N.Y. Jan. 29, 2007); *see also McPherson v. N.Y.C. Dep't of Educ.*, 457 F.3d 211, 214 (2d Cir. 2006). This period begins to run for each discrete discriminatory act when each such act occurs. *O'Grady*, 556 F. Supp. 2d at 199.

In addition, "'claims that were not asserted before the EEOC [or an appropriate State or local agency] may be pursued in a subsequent federal court action if they are reasonably related to those that were filed with the agency.'" *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 177 (2d Cir. 2005) (quoting *Legnani v. Alitalia Linee Aeree Italiane, S.P.A.*, 274 F.3d 683, 686 (2d Cir. 2001) (per curiam)). "Reasonably related conduct is that 'which would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge that was made.'" *Id.* (quoting *Fitzgerald v. Henderson*, 251 F.3d 345, 358 (2d Cir. 2001)); *see also Mathirampuzha v. Potter*, 548 F.3d 70, 77 (2d Cir. 2008) (stating that claim is reasonably related where "administrative complaint can be fairly read to encompass the claims ultimately pleaded in a civil action or to have placed the employer on notice that such claims might be raised"). In determining whether a claim is "reasonably related" to the EEOC charge, "'the focus should be on the factual allegations made in the [EEOC] charge itself'" and on whether those allegations "gave the [EEOC] 'adequate notice to investigate'" the claims asserted in court. *Williams v. N.Y.C. Hous. Auth.*, 458 F.3d 67, 70 (2d Cir. 2006) (quoting *Deravin v. Kerik*, 335 F.3d 195, 201–02 (2d Cir. 2003)). Another type of "reasonably related" claim is one alleging "further incidents of discrimination carried out in precisely the same manner alleged in the EEOC charge." *Butts v. N.Y.C. Dep't of Hous. Pres. & Dev.*, 990 F.2d 1397, 1402–03 (2d Cir. 1993), *superseded by statute on other grounds*, Civil Rights Act of 1991, Pub. L. No. 102-166.

b. Application

Although a charge was timely filed by plaintiff with the EEOC,[9] the Court concludes that the claim for the February 2010 demotion is not contained within, and is not "reasonably related" to, the scope of the EEOC charge. Specifically, the intake questionnaire and charge focus on plaintiff's demotion from DSM to FSM in April 2010 by Adams and while Ewashkow was

---

[9] A document filed with the EEOC can constitute a "charge" "when, in addition to providing necessary information about the charged party like its name and a description of the discriminatory conduct, it can be 'reasonably construed as a request for the agency to take remedial action to protect the employee's rights or otherwise settle a dispute between the employer and employee.'" *Davis v. Columbia Univ.*, No. 09 CV 9581(HB), 2010 WL 2143665, at *3 (S.D.N.Y. May 26, 2010) (quoting *Fed. Express Corp. v. Holowecki*, 552 U.S. 389, 402 (2008)). In *Davis*, the court found that the plaintiff's intake questionnaire could "objectively demonstrate a request for the EEOC to act on his discrimination claims" and save the claims because it provided identifying information and an additional affidavit laid out the factual details of the claim. *Id.* Similarly, here, the EEOC intake questionnaire includes the necessary identifying information and factual information about plaintiff's April 2010 demotion. Nevertheless, as set forth *infra*, the February 2010 discrimination claim was not "reasonably related" to the EEOC filings.

plaintiff's supervisor. (*See* Intake Questionnaire, at 1–2; EEOC Charge.) Plaintiff did not mention any adverse action before April 2010, name any other managers, or indicate there was "Continuing Action."[10] (*See* EEOC Charge.) In short, neither the charge nor the intake questionnaire mentions any adverse action, or any alleged discrimination, prior to the April 2010 demotion. Thus, nothing in the charge or intake questionnaire themselves could have put the EEOC on notice that plaintiff was challenging the February 2010 demotion. In fact, it does not even make the EEOC aware that there even was a demotion at all prior to April 2010. In his opposition, plaintiff claims he told Klinzing in April 2010 that age discrimination precipitated the demotions. Assuming that is true, there is simply no explanation for the absence of a specific allegation as to the February 2010 demotion in the EEOC submissions. Finally, although plaintiff points to defendant's discussion of the earlier demotion in its answer to the charge (*see* EEOC Answer, Bernbach Decl. Ex. 22, at 3–4), that discussion merely was background information (*see id.* at 2–4). It is not possible to read the answer and conclude that defendant was defending a discrimination claim as to the February 2010 demotion. Therefore, the Court concludes that the EEOC charge cannot "be fairly read to encompass [the February 2010 demotion claim] ultimately pleaded . . . or to have placed [SHIP] on notice that such [a claim] might be raised." *Mathirampuzha*, 548 F.3d at 77. Moreover, there is no basis to conclude that the February 2010 decision was carried out in precisely the same manner as the acts alleged in the EEOC charge. For example, Sprotte allegedly made the February 2010 demotion, while the April 2010 demotion was by Adams.

The Court's decision is consistent with the Second Circuit's reasoning in Butts. Specifically, in *Butts*, the Second Circuit held that prior denials of promotion in 1989–1990 were not "reasonably related" to claims in an EEOC charge where the EEOC charge made, *inter alia*, a vague claim or "denied promotional opportunities and consideration based on my race and sex" and a specific claim regarding exclusion from department reorganization meetings. 990 F.2d at 1403–04. Other courts have reached a similar conclusion under circumstances analogous to the instant case. *See, e.g.*, *Freeman v. Oakland Unified Sch. Dist.*, 291 F.3d 632, 637 (9th Cir. 2002) ("The factual allegations in Freeman's EEOC charge refer only to discriminatory conduct in relation to a specific election for the FAC. Nothing in the language of the charge itself would have resulted in an EEOC investigation encompassing alleged discrimination in the context of teaching assignments, class size, and the handling of the dispute over the eight-period work day."); *Lyles v. District of Columbia*, 777 F. Supp. 2d 128, 136 (D.D.C. 2011)

---

[10] A continuing violation may be found "where there is proof of specific ongoing discriminatory policies or practices, or where specific and related instances of discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice." *Cornwell v. Robinson*, 23 F.3d 694, 704 (2d Cir. 1994)); *see also Annis v. Cnty. of Westchester*, 136 F.3d 239, 245–46 (2d Cir. 1998). Here, however, plaintiff never asserted before the EEOC that SHIP engaged in "discriminatory policies or practices" before April 2010. *See Int'l Bd. of Teamsters v. United States*, 431 U.S. 324, 336 (1977) (holding that plaintiff must establish that "discrimination was the company's standard operating procedure"). Because plaintiff did not present this theory to the EEOC or place the EEOC on notice in any way that he was claiming the events of February 2010 were part of some continuing violation, he cannot assert it in this case. *Fitzgerald*, 251 F.3d at 360 ("[A] plaintiff may not rely on a continuing violation theory of timeliness unless she has asserted that theory in the administrative proceedings.").

("Plaintiff's EEOC charges outline three allegedly retaliatory acts of discrimination. The first is denial of promotions, the second is a threat to place plaintiff on leave, and the third is plaintiff's reassignment to the Day Treatment Program. As neither complaint raises the elimination of plaintiff's position in any way, the current claim has not been exhausted."); *Robinson-Reeder v. Am. Council on Educ.*, 532 F. Supp. 2d 6, 13 (D.D.C. 2008) (concluding that where EEOC charge was silent as to any claim of disparate treatment in connection with requests for technical assistance, such claim is not "reasonably related" to EEOC charge that alleged, *inter alia*, disparate treatment regarding a probation notice); *Stubbs v. McDonald's Corp.*, 224 F.R.D. 668, 672 (D. Kan. 2004) (claims that were not mentioned in EEOC charge—that is, claims of hostile work environment, failure to hire, pay disparity, and discriminatory terms and conditions—were not "reasonably related" to failure to promote and constructive discharge claims asserted in charge).

Accordingly, the Court grants the motion for summary judgment on the ADEA claim based on the February 2010 demotion.

The Court denies the motion, however, with respect to the constructive discharge claim. In the charge, plaintiff wrote that the "latest" date of discrimination was June 21, 2010, which was the approximate date when he left the Company. Plaintiff also noted that, after he resigned, his "former position was given to a much younger man." (*Id.*) In addition, the intake questionnaire mentions that Gilbert was similarly situated and demoted. (Intake Questionnaire, at 3.) Therefore, the charge can fairly be read to have put the EEOC and SHIP on notice that plaintiff took issue with the circumstances of his resignation, and it is likely that an EEOC investigation would have considered the events after the demotion. *See Jute*, 420 F.3d at 177. Accordingly, the Court denies the motion as to the constructive discharge.

In sum, the Court concludes that the February 2010 demotion was not part of the EEOC charge, or reasonably related to the charge, and thus, summary judgment as to the ADEA claim based upon that demotion is warranted in defendant's favor. However, the constructive discharge claim and the alleged demotion in April 2010,were within the scope of the EEOC charge. Thus, defendant's argument for summary judgment as to the constructive discharge claim on this ground is denied.

2. Merits Analysis

a. Legal Standard

The ADEA states that it is "unlawful for an employer . . . to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). The overriding issue in an age discrimination case is whether the plaintiff has met her burden of proving that "age was the 'but-for' cause of the challenged employer decision." *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 178 (2009) (holding that under the ADEA a plaintiff cannot establish disparate treatment by proving that age was simply a motivating factor in the adverse decision). In the absence of direct evidence of discrimination, claims for employment discrimination based on age are analyzed under the three-step, burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05 (1973). *See Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 106 (2d Cir. 2010) (holding that the Supreme Court's decision

in *Gross* did not disturb "the [*McDonnell Douglas*] burden-shifting framework for ADEA cases that has been consistently employed in [the Second] Circuit").

First, a plaintiff must establish a *prima facie* case of unlawful discrimination by showing that (1) he is a member of a protected class (2) who performed his job satisfactorily (3) but suffered an adverse employment action (4) under circumstances giving rise to an inference of discrimination (or retaliation). *See McDonnell Douglas Corp.*, 411 U.S. at 802 & n.13 (noting that elements of *prima facie* case vary depending on factual circumstances); *Stratton v. Dep't for the Aging for the City of N.Y.*, 132 F.3d 869, 879 (2d Cir. 1997).

Second, if the plaintiff establishes a *prima facie* case, "a rebuttable presumption of discrimination arises and the burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the employment decision." *Stratton*, 132 F.3d at 879; *see also Reeves v. Sanderson Plumbing Prods. Inc.*, 530 U.S. 133, 142–43 (2000). The purpose of this step is "to force the defendant to give an explanation for its conduct, in order to prevent employers from simply remaining silent while the plaintiff founders on the difficulty of proving discriminatory intent." *Fisher v. Vassar Coll.*, 114 F.3d 1332, 1335 (2d Cir. 1997) (en banc), *abrogated on other grounds by Reeves*, 530 U.S. at 148.

Third, if the employer articulates a nondiscriminatory reason for its actions, the presumption of discrimination is rebutted and it "simply drops out of the picture." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 510–11 (1993) (citation omitted); *see also James v. N.Y. Racing Ass'n*, 233 F.3d 149, 154 (2d Cir. 2000). The burden then shifts back to the plaintiff to show, without the benefit of any presumptions, that "a reasonable jury could conclude by a preponderance of the evidence that her age was a 'but for' cause" for the adverse action. *Gorzynski*, 596 F.3d at 107. To meet this burden, the plaintiff may rely on evidence presented to establish her *prima facie* case as well as additional evidence. Such additional evidence may include direct or circumstantial evidence of discrimination. *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 99–101 (2003). It is not sufficient, however, for a plaintiff merely to show that she satisfies "*McDonnell Douglas*'s minimal requirements of a *prima facie* case" and to put forward "evidence from which a factfinder could find that the employer's explanation . . . was false." *James*, 233 F.3d at 157. Instead, the key is whether there is sufficient evidence in the record from which a reasonable trier of fact could find in favor of plaintiff on the ultimate issue, that is, whether the record contains sufficient evidence to support an inference of discrimination. *See id.*; *Connell v. Consol. Edison Co.*, 109 F. Supp. 2d 202, 207–08 (S.D.N.Y. 2000).

As the Second Circuit observed in *James*, "the way to tell whether a plaintiff's case is sufficient to sustain a verdict is to analyze the particular evidence to determine whether it reasonably supports an inference of the facts plaintiff must prove—particularly discrimination." 233 F.3d at 157; *see also Norton v. Sam's Club*, 145 F.3d 114, 118 (2d Cir. 1998) ("The thick accretion of cases interpreting this burden-shifting framework should not obscure the simple principle that lies at the core of anti-discrimination cases. In these, as in most other cases, the plaintiff has the ultimate burden of persuasion.").

b. Application

Defendant does not contest, for purposes of the summary judgment motion, that plaintiff meets the first two elements of the *prima facie* test for age discrimination. SHIP contests the third and fourth prongs. According to SHIP, plaintiff cannot establish a *prima facie* case of age discrimination in connection with his April 2010 demotion or alleged constructive discharge because (1) plaintiff had been promoted several times previously; (2) other individuals around plaintiff's age received promotions at the relevant time; (3) plaintiff refused the offer to return to a DSM position after the initial FSM change, and therefore there was no adverse employment action; and (4) plaintiff cannot establish intentionally intolerable working conditions to support a constructive discharge claim. As set forth below, the Court concludes that the evidence, construed most favorably to plaintiff, is sufficient to create genuine issues of disputed fact as to each of the elements of a *prima facie case* such that summary judgment is unwarranted.

i. Adverse Employment Action

The Court first considers whether plaintiff suffered adverse employment actions. "Adverse employment actions include discharge, refusal to higher, refusal to promote, demotion, reduction in pay, and reprimand." *Wrobel v. Cnty. of Erie*, 692 F.3d 22, 31 (2d Cir. 2012); *Morris v. Landau*, 196 F.3d 102, 110 (2d Cir. 1999). A constructive discharge is "functionally the same as an actionable termination" and therefore is considered an adverse employment action. *Pa. State Police v. Suders*, 542 U.S. 129, 148 (2004); *see also Fitzgerald v. Henderson*, 251 F.3d 345, 357 (2d. Cir. 2001) (stating that discharge from employment "may be either an actual termination . . . or a 'constructive' discharge"). Further, "lesser actions" may be "considered adverse employment actions." *Morris*, 196 F.3d at 110; *see also Phillips v. Bowen*, 278 F.3d 103, 109 (2d Cir. 2002) ("Our precedent allows a combination of seemingly minor incidents to form the basis of a constitutional retaliation claim once they reach a critical mass." (citing *Bernheim*, 79 F.3d at 325)). "A constructive discharge occurs when an employer 'intentionally create[s] an intolerable work atmosphere that force[s the plaintiff] to quit involuntarily." *Dall v. St. Catherine of Siena Medical Ctr.*, --- F. Supp. 2d ---, 2013 WL 4432354, at *8 (E.D.N.Y. Aug. 14, 2013) (quoting *Anderson v. Rochester City Sch. Dist.*, 481 F. App'x 628, 632 (2d Cir. 2012)). "To find that an employee's resignation amounted to a constructive discharge, 'the trier of fact must be satisfied that the . . . working conditions would have been so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign.'" *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 73 (2d Cir. 2000) (quoting *Lopez v. S.B. Thomas*, 831 F.2d 1184, 1188 (2d Cir. 1987)); *see Petrosino v. Bell Atl.*, 385 F. 3d 210, 229–30 (2d Cir. 2004) (requiring plaintiff to present evidence from which reasonable inference might be drawn that (1) employer's actions were "deliberate and not merely negligent or ineffective," and (2) a reasonable person in employee's position would find working conditions objectively intolerable).

A. April 2010 Demotion

Defendant argues that the April 2010 demotion was not an "adverse employment action" because plaintiff refused to accept the DSM promotion in May 2010. As a threshold matter, there is evidence of plaintiff's demotion by Adam on April 4,

2010— namely, the directive that he report as an FSM to Long Island—which would constitute an adverse employment action. *Wrobel*, 692 F.3d at 31. For purposes of establishing an adverse employment action, it is not dispositive that Klinzing allegedly never knew about the transfer, that the transfer paperwork was not completed properly, or that plaintiff continued to receive a DSM salary due to an oversight, because it is indisputable that the FSM position is below the DSM position. (*Contra* Motion, at 16.) Moreover, defendant's reliance on plaintiff's refusal to accept a promotion back to DSM in April 2010 similarly is unavailing on this issue. In other words, given plaintiff's evidence that he was demoted, an offer to promote back does not mean a prior alleged adverse employment action did not take place. Such issues obviously can go to the question of damages, but do not eviscerate the plaintiff's ability to establish that there was an adverse employment action for some period of time. Therefore, construed most favorably to plaintiff, the evidence of the alleged the April 2010 demotion satisfies the adverse employment action prong. Thus, summary judgment on that ground is denied.

B. Constructive Discharge

Defendant also argues that plaintiff has insufficient evidence to demonstrate that the working conditions were so intolerable in June 2010 to support a constructive discharge claim. In particular, defendant contends that no reasonable person in plaintiff's position would have been compelled to resign, given the offer of promotion, the lack of repeated threats to terminate plaintiff, plaintiff's relationship with Marin, and plaintiff's decision to search for a job at Home Depot before his resignation. (Motion, at 18–21.) Viewing the facts and drawing all inferences in plaintiff's favor, the Court disagrees and concludes that there is sufficient evidence in the record to create a factual dispute on this issue.

A constructive discharge cannot be established simply through evidence that an employee was dissatisfied with the nature of the assignments, feels that the quality of her work has been unfairly criticized, or that her working conditions were difficult and unpleasant. *Stetson v. NYNEX Serv. Co.*, 995 F.2d 335, 360 (2d Cir. 1993). Instead, as noted *supra*, the evidence must be sufficient to permit a rational trier of fact to infer that the employer deliberately created working conditions that were "so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." *Id.* at 361 (citation omitted). Here, plaintiff worked for Sears/SHIP for thirty-eight years, and his demotions began late during his tenure. Although human resources investigated the demotions, Moore offered a promotion, and plaintiff had a good relationship with Marin, a reasonable factfinder could rely on numerous countervailing facts, if credited, to conclude that plaintiff was constructively discharged.

For example, plaintiff claims he frequently was told that SHIP "needed more young blood in the organization" and "to get rid of the old wood." (Pl. 56.1 ¶ 136.) At job fairs, Moore allegedly said, "I don't know what's wrong with these older guys, they don't want to work, we need younger blood." (*Id.*) Sprotte also allegedly said, "We got to get rid of these old guys, we have to fill them with new, younger blood." (*Id.*) According to plaintiff, "[t]here just seemed to be a perception with all the individuals that we need younger people in the organization because they felt that the younger people had more energy, and they wanted to mirror other parts of the country where there was an overall younger

13

organization in the home improvement business." (Sandvik Dep. in *Laskin* at 11, Bernbach Decl. Ex. 2.) Superiors also allegedly exploited performance numbers to manipulate them and develop "sham PPIs" for older employees. (Pl. 56.1 ¶ 142.) Plaintiff also points to the lack of any documentary evidence about plaintiff's demotions, and that Bingham and Burnett— both of who are significantly younger than plaintiff—immediately replaced him after each demotion. In addition, there is evidence Gilbert and Marin told plaintiff he was in a precarious situation with Adam regardless of any offer of promotion back to DSM after the demotion to FSM. Thus, plaintiff asserted that the promotion offer was dubious given that the same supervisors previously had falsely taken issue with his performance. *Cf. Shannon v. Fireman's Fund Ins. Co.*, 156 F. Supp. 2d 279, 291 (S.D.N.Y. 2001) ("It is well-settled that a plaintiff, in conjunction with other evidence, may demonstrate pretext in a discrimination case by pointing to 'weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered legitimate, nondiscriminatory reason for its action.'" (quoting *Cruise v. G & J USA Publ'g*, 96 F. Supp. 2d 320, 329 (S.D.N.Y. 2000))).

In particular, plaintiff asserts the following explanation regarding his refusal to accept the promotion and subsequent decision to resign:

> Between late April and early May 2010, just weeks after his precipitous demotion to FSM due to his allegedly abysmal performance as DSM, plaintiff was "offered promotion" *back to DSM* by Moore; this, despite the fact that both Moore and Adam claimed to have believed plaintiff wholly unqualified for the job; and that the "offered" DSM position was in Long Island, a "much larger district," with considerably more business and sales reps to supervise, than the New York City District in which plaintiff supposedly failed so miserably. Instantly, dubious of the "offer" given these glaring illogicalities, and viewing it instead as a ruse by defendant to cover itself in the event of a lawsuit (a distinct possibility give his recent age-discrimination complaint to Klinzing), plaintiff shared his concerns with Gilbert, who at the time was already the Long Island DSM and in that position plaintiff's immediate supervisor, and who immediately heightened plaintiff's suspicions by advising him that the "offer" was premised upon the claim that, in light of the increased sales volume in Long Island, a second DSM job would be created in the district, an untruth that had already been peddled virtually word-for word to plaintiff preceding his demotion from DGM. Gilbert, however, went even further, agreeing with plaintiff that the "offer" made no sense in light of plaintiff's recent demotions and was merely a ploy by which defendant and its decisionmakers sought to "cover their ass," and accordingly warning plaintiff that, were he to accept it would not stop Adam from inevitably firing him. Plaintiff also raised his worries over the "offer" with Long Island DGM Marin, who, after first assuring plaintiff that he had it wrong, a day or two later called plaintiff into his office and completely reversed course, concurring with plaintiff that Adam had it in for him and that accepting

14

the "offer" would not quell Adam's determination to terminate him. In light of these dire warnings from his superiors; his extensive, up-close experience watching older employees in the district "squeezed," as he was then being, until fired or forced out; his wish to deprive defendant of the opportunity to obscure its discrimination against him by pointing to hits having treated him "favorably" by "promoting" him; and the need to secure a livelihood he could depend on, plaintiff declined the offer and not long after resigned.

(Opposition, at 20–21 (citations and footnotes omitted).) Defendant counters that any alleged concerns plaintiff had about the promotion back to DSM (including concerns about Adam) should have been eliminated when Moore told plaintiff that there would be no issue with Adam, and that Moore would speak to him. (*See* Reply, at 13–14.) However, in this particular case, that issue— whether a reasonable person would have felt compelled to turn down the promotion and soon thereafter resign, despite Moore's attempted reassurances—should be resolved by a jury given plaintiff's evidence, if credited.

In sum, if the evidence is construed most favorably to plaintiff, a reasonable factfinder could agree with plaintiff's contention that (1) his performance was never a real issue and that, instead, his supervisors wanted to replace him with younger associates; (2) notwithstanding the offer that he would be placed back in a DSM position, he was likely to continue to have false reports of bad performance, because certain supervisors wanted him replaced based upon his age; and (3) given the totality of the circumstances, his situation was so intolerable that a reasonable person would have felt compelled to resign. Thus, there is sufficient evidence to create factual disputes as to whether plaintiff was the victim of a constructive discharge, and summary judgment on this ground is denied.

ii. Circumstances Giving Rise to an Inference of Discrimination

As often is the case in discrimination suits, plaintiff here does not produce direct evidence of discriminatory bias as to him. *See Carlton v. Mystic Transp., Inc.*, 202 F.3d 129, 135 (2d Cir. 2000) ("[A]n employer who discriminates against its employee is unlikely to leave a well-marked trail, such as making a notation to that effect in the employee's personnel file."). There are no statements from any supervisor indicating that plaintiff was demoted or treated poorly because of his age. However, to be successful in such a suit, plaintiff need not present direct evidence of discrimination. *See Luciano v. Olsten Corp.*, 110 F.3d 210, 215 (2d Cir. 1997) ("Direct evidence is not necessary, and a plaintiff charging discrimination against an employer is usually constrained to rely on the cumulative weight of the circumstantial evidence."). In *Reeves v. Sanderson Plumbing Products, Inc.*, the Supreme Court made clear that "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, *may* permit the trier of fact to conclude that the employer unlawfully discriminated." 530 U.S. 133, 148 (2000) (emphasis added). Thus, in determining whether there is sufficient evidence of pretext to support a jury verdict in plaintiff's favor, a court must "examin[e] the entire record to determine whether the plaintiff could satisfy his 'ultimate burden of persuading the trier of fact that the defendant intentionally discriminated

15

against the plaintiff.'" *Schnabel v. Abramson*, 232 F.3d 83, 90 (2d Cir. 2000) (quoting *Reeves*, 530 U.S. at 143) (internal quotation marks omitted). That is, a court reviewing such evidence must consider "'the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports [or undermines] the employer's case and that properly may be considered on a motion for judgment as a matter of law.'" *Shannon,* 156 F. Supp. 2d at 289 (quoting *Reeves*, 530 U.S. at 149–50).

In itself, the accuracy or the wisdom of the decision to demote plaintiff cannot create a triable issue of fact as to whether the proffered reasons for plaintiff's demotion were a pretext for discrimination. The question in any discrimination case is not whether defendant's action was correct, but whether it was discriminatory. *See, e.g.*, *McPherson v. N.Y.C. Dept. of Educ.*, 457 F.3d 211, 216 (2d Cir. 2006) ("In a discrimination case . . . we are decidedly not interested in the truth of the allegations against plaintiff. We are interested in what '*motivated* the employer . . . .'" (quoting *U.S. Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 716 (1983))); *Koleskinow v. Hudson Valley Hosp. Ctr.*, 622 F. Supp. 2d 98, 111 (S.D.N.Y. 2009) ("Where a plaintiff has been terminated for misconduct, the question is not 'whether the employer reached a correct conclusion in attributing fault [to the plaintiff] . . . , but whether the employer made a good-faith business determination.'" (quoting *Baur v. Rosenberg, Minc, Falkoff & Wolff*, No. 07-Civ.-8835, 2008 WL 5110976, at *5 (S.D.N.Y. Dec. 2, 2008))); *Agugliaro v. Brooks Bros., Inc.*, 927 F. Supp. 741, 747 (S.D.N.Y. 1996) ("Even assuming defendants were wrong in their belief that plaintiff had engaged in sexual misconduct, what is significant is that they based their decision to dismiss plaintiff on that belief, and not on his age, gender, or pension status."). Here, construing all inferences in plaintiff's favor, the evidence suggests more than a performance-related demotion; rather, a reasonable factfinder could conclude that plaintiff's demotion was part of a policy to push out older employees.

As noted *supra*, there is extensive evidence of ageist comments and actions, albeit against others, by the individuals who demoted plaintiff. Younger associates also replaced plaintiff immediately after each demotion. Such facts support an inference of age discrimination. Moreover, plaintiff points out that SHIP has put forth no rational explanation for plaintiff's demotion in April 2010. In particular, plaintiff notes that Ewashkow's testimony, in itself, contradicts Adam's statements that performance was an issue. Further, plaintiff asserts that, based on charts from SHIP, from 2008–2010, the number of workers aged fifty or older employed in the Long Island District fell eighty-one percent, from thirty-two to six. (Pl. 56.1 ¶ 157.) In 2009 and 2010, fifteen of the twenty-one individuals hired were forty or younger, with twelve of them thirty-five or younger. (*Id.* ¶ 159.) Although the Court recognizes that newly-hired employees likely will be younger than established employees or those leaving the company, irrespective of age-related discrimination, *see, e.g.*, *Kier v. Commercial Union Ins. Co.*, 808 F.2d 1254, 1258 (7th Cir.), *cert denied*, 481 U.S. 1029 (1997) (replacement of older workers with younger ones "represents the normal course of employment histories, and is nothing to marvel at"), such statistics can support an inference of discrimination, and may have added probative value when examined in the context of the entire record.

In sum, considering the evidence as a whole and viewing it in the light most favorable to plaintiff, a reasonable jury could find that plaintiff's age was the but-for reason in defendant's decision to demote plaintiff in April 2010.[11] Moreover, as discussed *supra*, under that same standard, a reasonable jury could find that, notwithstanding the Company's offer to put him back in a DSM position, the situation was so intolerable based upon age that a reasonable person would feel compelled to reject that position and to resign. Accordingly, plaintiff has presented sufficient evidence giving rise to circumstances of age discrimination to defeat summary judgment as to the ADEA claim.[12]

B. State and City Law Claims

As the Second Circuit has noted, "[t]he elements of an age discrimination claim are essentially the same under the ADEA and the NYSHRL, and courts apply the same standards for analyzing age discrimination claims under both statutes." *Gonzalez v. Carestream Health, Inc.*, 520 F. App'x 8, 10 (2d Cir. 2013) (*citing Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 913 (2d Cir. 1997)). Further, the NYSHRL and NYCHRL do not require exhaustion of administrative remedies. *Butler v. N.Y. Health & Racquet Club*, 768 F. Supp. 2d 516, 536 (S.D.N.Y. 2011) (citing *Branker v. Pfizer, Inc.*, 981 F. Supp. 862, 865 (S.D.N.Y. 1997)); *Lomako v. N.Y. Inst. of Tech.*, No. 09 Civ. 6066(HB), 2010 WL 1915041, at *7 n.10 (S.D.N.Y. May 12, 2010) (explaining same); *see* N.Y. Exec. L. § 297(9) ("Any person claiming to be aggrieved by an unlawful discriminatory practice shall have a cause of action in any court of appropriate jurisdiction for damages."); N.Y.C. Admin. Code § 8–502(a) (requiring only that plaintiff filing NYCHRL claim serve complaint on City before commencing action). Defendant does not contend that plaintiff's NYSHRL and NYCHRL claims are administratively barred.

In addition, the NYCHRL, as amended by the Local Civil Rights Restoration Act of 2005, "makes it clear that it 'shall be construed liberally for the accomplishment of the uniquely broad and remedial purposes thereof, regardless of whether federal or New York State civil and human rights laws . . . have been so construed.'" *Zambrano-Lamhaouhi v. N.Y.C. Bd. of Educ.*, 866 F. Supp. 2d 147, 159 (E.D.N.Y. 2011) (citing N.Y.C. Admin. Code § 8–130). Therefore, "claims under the [NYCHRL] must be given 'an independent liberal construction analysis

---

[11] Although defendant does not specifically argue that there was a legitimate, non-discriminatory reason for the April 2010 demotion, even assuming *arguendo* that such an argument is implicitly being made, the Court concludes that plaintiff's evidence in the record supporting his discrimination claims (discussed *supra*) is sufficient to preclude summary judgment as to whether any articulated reason for the April 2010 demotion, such as performance, was a pretext for age discrimination.

[12] Defendant also argues that plaintiff's claims for damages must be dismissed because he voluntarily resigned. However, because the Court finds that there are disputed issues of fact as to whether plaintiff was constructively discharged, the Court finds the damages argument to be without merit at this juncture. Similarly, there is insufficient basis at this juncture to conclude, as a matter of law, that plaintiff suffered no emotional damages because he subsequently obtained a job at Home Depot. Finally, to the extent that defendant also argues that summary judgment should be granted as to the claim for liquidated damages, the Court concludes that the evidence summarized herein, construed most favorably to plaintiff, raises a disputed fact as to the question of willfulness that precludes summary judgment as to the issue of liquidated damages.

in all circumstances.'" *Loeffler v. Staten Island Univ. Hosp.,* 582 F.3d 268, 278 (2d Cir. 2009) (quoting *Williams v. N.Y.C. Hous. Auth.*, 872 N.Y.S.2d 27, 31 (N.Y. App. Div. 2009)); *accord St. Jean v. United Parcel Serv. Gen. Serv.*, 509 F. App'x 90, 90–91 (2d Cir. 2013). Further, "under the [NYCHRL], the plaintiff need not show that [he] was subject to an adverse employment action; instead, [he] need only show that [he] has been treated less well than other employees because of" his membership in a protected class. *Zambrano–Lamhaouhi*, 866 F. Supp. 2d at 160 (internal citations and quotations omitted).

Under these standards, based upon the same evidence that the Court concluded was sufficient to preclude summary judgment on the ADEA claim, the Court concludes that plaintiff's state and city discrimination claims, which include the February 2010 demotion, also survive summary judgment.[13]

Accordingly, the Court denies defendant's motion for summary judgment as to the state and city claims as well.

### IV. CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part the motion for summary judgment. In particular, the Court grants the motion as to the ADEA claim based on the alleged February 2010 demotion, but denies that motion as it relates to the ADEA claim based upon the alleged April 2010 demotion and alleged constructive discharge. The Court denies the motion as to the claims under the NYSHRL and NYCHRL in their entirety.

SO ORDERED.

_____

JOSEPH F. BIANCO
United States District Judge

Dated: January 2, 2014
      Central Islip, NY

\* \* \*

Plaintiff is represented by Jeffrey M. Bernbach and Jason Bernbach of Bernbach Law Firm PLLC, 245 Main Street, White Plains, NY 10601. Defendant is represented by Joseph Saccomano, Jr. and Susanne Kantor of Jackson & Lewis LLP, One North Broadway, White Plains, NY 10601.

---

[13] As a threshold matter, as noted above, the exhaustion issue that precludes the federal age discrimination claim relating to the February 2010 demotion from surviving summary judgment does not apply to the claims under state and city law. To the extent SHIP argues that there is insufficient evidence of age discrimination with respect to the February 2010 demotion to survive summary judgment, especially in light of the articulated, non-discriminatory reason for the demotion, the Court concludes that plaintiff's evidence as to that demotion is sufficient to create a genuine issue of material fact as to whether any performance-related justification was a pretext for age discrimination, such that summary judgment under the state and city law claims relating to that demotion is unwarranted. As to that demotion, plaintiff points to evidence of, *inter alia*, plaintiff's generally favorable performance review in mid-2009, the lack of any PPI or other documentation regarding the demotion, plaintiff's replacement—albeit only initially—by a younger associate, and the ageist statements allegedly made by Sprotte. Construed most favorably to plaintiff, the evidence in the record is sufficient, under the *McDonnell Douglas* test, to preclude summary judgment as to the February 2010 demotion, as well as the April 2010 demotion and alleged constructive discharge, under the NYSHRL and NYCHRL. In addition, to the extent defendant argues that the NYSHRL claims should be dismissed because there is insufficient evidence that it had notice of any discrimination and condoned it, the Court concludes (based upon the evidence discussed *supra*, including the alleged supervisory involvement in the adverse employment actions) that there is sufficient evidence to create a factual dispute on this issue of state law to preclude summary judgment.